As we can tell from the fact that we have a full courtroom today, we have several arguments. We have five cases on the docket, one of which has been submitted on the briefs. The other four cases are being argued today. The first is Ironburg Investments v. Valve Corp. It's an appeal from the decision of the Patent Trial and Appeal Board. The case number is 181432. Mr. Becker, you want five minutes for rebuttal? Yes. Thank you. Robert Becker Good morning. May it please the Court, my name is Robert Becker. I'm with Manat, Phelps & Phillips, and I represent the patent holder Ironburg Inventions. The patent holder in this case invented a very unique video game controller, and a key aspect of it is that it is a handheld controller. In the video game industry, there are roughly two types of controllers. There's an Atari-type machine that you can walk up to, put your hands on controls, and control it, but you don't hold it in your hands, and you don't walk away with it, and you can't move around with it. You move to it. It is supported typically by the floor, but it could be a table, and you play with it with your hands, and that's how that operates. We're under BRI here, though, right? We're still under the reasonable interpretation that this is before the change. You are correct. So I understand your arguments, but given that distinction that you just made, the one that you can't move around with, if you can move around and put part of it between your legs, why doesn't that satisfy that distinction? Well, you can't move around with it. You put it between your legs to anchor it. You essentially become part of the seat and the floor, and your legs clamp on it so that it can't move. In fact, with respect to the Tosaki reference and the steering wheel that it is, it is meant to mimic an actual steering wheel in a car such that the base of the whole thing is fixed so that you can turn the wheel and by doing that give it inputs. The base has to be fixed in order for it to work in that fashion. If it was a handheld controller and you turned it, the whole thing would turn, and you wouldn't have the rotational aspect that the Tosaki reference relies on. It is an actual steering wheel, and it works just like the one in your car, except for it sends an electronic signal to a gain as opposed to driving a car. Well, could that Tosaki steering wheel be turned without it being anchored? There's no evidence of that, and I don't believe it does, no. So what's the best support in your own spec for the proposition that fully operable in your hands alone is required? Well, it's the totality, but I can go through the examples. It is stated in the preamble, in the claims, in the summary of the invention as being a handheld controller, and that means in the art a controller that you hold in your hands, as I was explaining before. There's the fixed kind, and there's the handheld kind. But it's not necessarily restricted to a controller that doesn't have other support. Well, we got into this discussion before the board because they said, well, what about if you have a controller at Best Buy, and it's attached to a wall so that you won't steal it. And it was asked whether that would still be a handheld controller. And I think that that sort of twists the invention, twists the claim language, and twists the inquiry. The inquiry is whether the thing, whether you've bolted it to the wall or not, is a handheld controller. Well, the focus of the claim, the focus of the entire invention, is all about the controls and the placement of various controls on the front and the back and providing additional capabilities by adding to the controller the controls on the back. That's, it seems to me, from a fair reading of both of these patents, that's the thrust of the inventions here. Whether the controller itself is big, small, large, attached, not attached, is, it seems to me, sort of a secondary consideration, and I don't read anything in this specification that places any restrictions on the invention on the basis of support. Actually, it's a primary consideration. I have, I'm just holding up one of the figures of the patents, but it shows the controller in the hands of a user. The size and the shape. Sure, but the importance of your invention is not to move from those old arcade-style games that are in a big box on the floor to a handheld controller. You've added new buttons and new capacity. So even if Tosaki isn't completely handheld, it teaches, what we're concerned about is it teaches the new element. I know that you think it's just not useful at all as art because it's not a handheld controller, but if we agree with the board that under BRI, handheld doesn't have to be exclusively handheld, but the controller part is what's being held by the hand and used, why isn't that good enough? Well, I think what the board says was it can have support other than the hands, and that essentially eviscerates the whole handheld limitation. If we accept that argument, there is no handheld limitation because something can be completely supported on this desk and all I have to do is come up and touch a control with a finger. That would eviscerate. When you say handheld limitation, are you relying on a preamble for that? Well, it's the preamble, but the handheld aspect runs through the claims because it talks about positioning with respect to your fingers. Sure, but that goes back, I think, to what I was talking about in the sense that it's talking about the controls being, the controller itself being held by the hands in the various places where you can have buttons and stuff. If you read every time, or at least when I do, where they're talking about being held in the hand, it's followed by positioning of thumbs or fingers or things like that. If that's what we're looking at is whether this controller, whether the controls are all in the hands as opposed to some other place. Some arcade games have pedals if they're a driving game or all other kinds of things, and they're not exclusively held in the hands. Then why doesn't Sasaki teach all of those things? Well, the challenges are different when you have a handheld controller because your fingers have to be in the correct place. You don't have the luxury of letting go and touching while something else supports the controller. It's meant to be movable, it's meant to be positioned such that your hands curve around it, unlike other controllers, and that you can move around and play a game. That problem doesn't exist with the other controllers. If we agree with you on handheld, then that means that the anticipation finding was improper. That's correct. But what does that do with respect to the obvious misdetermination? It doesn't necessarily end the inquiry, does it? You are correct about that. So on the obviousness, you're correct about that. Let me bring one more point with respect to the claim construction. The claims also, with respect to the handheld controller, they say you have a handheld controller that has an outer case with a front and a back. So that's the front and the back of the outer case, and then the controls are on the back, and the back is a reference back to the antecedent basis, which is the back of the outer case. Again, Tosaki doesn't have, even if it has steering wheel controls, it doesn't have controls on the back of the case. If we were to say that whole thing satisfies the limitation of being a handheld controller, the controls are not on the back of the outer case of Tosaki. If anything, they're inside the steering wheel, and you can access them from the back, but they're not on the back, and they're certainly not on the back of the outer case, which would be where your knees are when it's locked between your knees. On the question you raised, the obviousness finding by the board was based on the assertion of Enright. Enright, in combination with Tosaki, Enright was used for the independent claim one for all of the limitations, so that would include everything, except for length, and it said that Tosaki satisfied the length requirements because Enright just has little hard buttons on the back. They're described as mode buttons, so you can imagine these are not firing buttons. They're mode A or mode B. They're like a setting. What was said by the petitioner was that Tosaki's extra long paddles could be used instead of these mode buttons. The problem was that they didn't say anything about flexibility, which was a key limitation in the claims, that the controls had to have inherent flexibility. The reason for that is you rapid fire with your fingers on the back of a controller, and they flutter around. A switch that you just push that's hard doesn't do that. The controls in Tosaki are both resilient and flexible. Isn't that right? Well, that was asserted, yes, but that was not the basis for what was instituted and was not argued by Valve. It was argued in the reply brief after the board came up with the new construction, wasn't it? Well, the board came up. I think the construction, we made an argument. In their petition, they argued for a certain construction. You had a response when the board instituted. They disagreed with the petitioner's construction. I don't know if they agreed with yours or if they came up with their own, but after that, since they had argued under a construction that was rejected, they came forth with a new argument, admittedly a new argument, I think, but based upon the same prior ARC references for why they won even under the new construction. Why isn't that permissible? Well, I think even that is a stretch. If you look at their petition, they did talk about the flexibility of Tosaki, as Your Honor just questioned. They did talk about that. I thought they argued that because it was called inherently resilient and flexible that those meant exactly the same thing, and the board found them to be two different limiting terms. They said that with respect to Enright. When they were dealing with Tosaki, they said Tosaki's flexible. You're in your rebuttal, but before you sit down, let me understand. The flexibility only relates to the Group 3 claims, right? Well, yes. Okay, but the board made obvious findings with respect to the other claims and just found that Enright satisfied the handheld concept. Enright satisfied handheld, and the length of the controls was satisfied by Tosaki. We contend that there are just mere conclusions in the evidence that says it would be obvious to add these without any articulated reasoning. Okay, do you want to save the rest? I would, please. Okay. Thank you. May it please the Court? The board's determination for the Group 1 claims that they were anticipated by Tosaki is supported by substantial evidence and should be affirmed. Likewise, the board's obviousness determination with respect to the Group 2 claims that its findings underlying obviousness were supported by substantial evidence and its legal conclusion as to obviousness was correct as a matter of law, and that also should be affirmed. So basically what you're saying is let's forget about handheld and anticipation and let's just look at obviousness? I'll address it. I have to say I think that would be a smart move from my perspective because I have a hard time with the handheld thing. I think I will. You can see that the preamble's limiting, right? Well, whether the preamble's limiting or not, I don't think makes a difference. What matters are all the limitations of the body of the claim met. We don't disagree that there's a handheld requirement with respect to Claim 1 of the 525 patent. The Claim 1 of the 770 patent recites a video game controller and it doesn't refer, I mean it has handles recited in the claim, but it doesn't have the same hand-type structure of what's in the 525 patent. Nonetheless, I mean each of the limitations that are recited in those claims are met by Tesaki, and there is no additional requirement that somehow the device itself must be handheld for every purpose. Can I just clarify because I'm a little confused? Sure. There aren't completely overlapping obviousness and anticipation findings for the Group 1 claims, are there? If we disagreed with you on anticipation, we couldn't still affirm everything under obviousness on the 525? Well, yes and no. You could because there is an overlap in the Group 3 claims where we think that there was part of the group. No, but the Group 3 claims you lost on largely. We did lose on the Group 3 claims. Well, so don't argue those yet. I mean we can get back to those. Okay. I know those are overlapping, but if we're just dealing with Group 1 and Group 2, for obviousness, maybe I've got this wrong, but I thought that the Board only found obviousness for the 525 on Claim 20 and that they had to rely on anticipation for all the other 525 claims. That's my understanding as well. That is correct. Right. So you don't want, you're not going to concede that anticipation, that we don't need to reach anticipation for 525. Oh, that's correct. Right, because that's a bunch of claims. That's a bunch of claims. Only by the anticipation rejection under Tesaki. That is correct. I mean, I get that you think, although even Group 3 doesn't seem to cover all of that Group 1 claims either. It covers more of it than Group 2, but it still doesn't cover everything. That's correct, although Valve did assert at the Board that the same claims that were anticipated by Tesaki would also have been rendered obvious. If you look at the Appendix 287.01, that there was an assertion of obviousness on the alternative for the Group 1 claims as well. The Board didn't separately address obviousness with respect to the claims that it found to be anticipated by Tesaki. Was that a ground for institution in your brief? I'm sorry to be so technical. So it was separately. So when you're talking about the Group 1 claims, well, Group 1 is anticipation, but when you're talking about all the 525 claims, did you argue for more anticipation under Tesaki and obviousness under Tesaki and Enright for all of the claims? In the petition, Valve noted that the same claims on which it was asserting anticipation by Tesaki in the alternative would be rendered obvious. And did the Board institute on all those arguments? The Board instituted on anticipation. And it didn't institute on obviousness? It instituted on... Uncomputed procedure. You know, when we have overlapping patents, overlapping claims, overlapping grounds for invalidity, our precedent is, you know, makes clear that the Board has to look at all of them, SAS makes clear, and also means that there's, you know, some procedural niceties about how we have to address them. And it wasn't clear to me that the Board looked at obviousness for the 525 claims except for Claim 20. It didn't look at it based on Tesaki alone. That's correct. All right, so that's getting back to hand-held. One of my biggest problems is the Board's reliance on the word comprising. I mean, it's a basic grammatical mistake. I mean, they say comprising relates to hand-held, and yet the words before the word comprising are game controller. So you look to the last antecedent to see what the comprising modifies, right? Sure, yes, Your Honor. Okay, so wasn't it improper for the Board to rely on comprising with respect to the issue of hand-held? Well, I think what's claimed is the structural limitations of the claim. So the Board said that the language of Claims 1 and 20 requires the controller to be hand-held and to have a particular shape that's permitting the user's thumbs to be positioned to operate the front control, and then it would be the fingers on the back control. But hand-held means it has to be being held in the hand and operable and so held. So it needs to be held in the hand and operable and so held for what is recited in the claims. If there's other structure that's added, I mean, suddenly a steering wheel in a car doesn't become not hand-held, not held by one's grips because it's also connected to a chassis. So the issue of portability and movability is not something that is a requirement of the claim. Did that answer Your Honor's question? Did I confuse things further? No, go ahead. Keep going. You're almost in your friend's time, though, so be careful. Yes. Let me move to, unless there's any other questions about hand-held, I'll move over to obviousness. So first, with respect to obviousness. I mean, you're almost out of time. Can you move to your argument on your cross-field on the three claims? Yes. I mean, I'm not unsympathetic that you've gotten a new claim construction and that you should get a reply on the board to consider it. Although, when I think about it more, it seems to me like you set out a theory of invalidity that said, let me just give it hypothetically because I don't want to go too far into that. One reference shows these two things. Another reference shows the third thing, based upon our claim construction. And the board comes in with a new claim construction, and you say, well, based upon that new claim construction, we're going to switch the references around. We're going to use the same references, but we're going to use them in ways that we didn't ask for institution on. How is that permissible? To me, that seems like the same way as saying if you get a new claim construction where your references don't provide the answer, you get to say, well, this other reference we didn't cite at all would provide the answer. And that clearly wouldn't be permissible. Why going to a reference that you didn't cite for a certain element after a new claim construction? Why is that permissible? Well, I think it's permissible under the Erickson case, under Erickson versus Intellectual Ventures. That is where— Was it going to a different reference, or was it going to different parts of the same reference? Because, look, the problem is you relied on Enright for the buttons, right? The flexible and resilient buttons. Correct. And Enright doesn't show flexible buttons. It may show resilient buttons. You didn't rely on Sasaki for that. And so that's almost like it seems like you're bringing in a new reference for that point, even though Sasaki was relying on for something else. If you were going to a different part of Enright that showed flexibility, then that would seem perfectly permissible. But why is adding Sasaki as a new reference for the flexibility point okay? Well, what we're looking at here is, first of all, there's two bases on which this Court could reverse or vacate and remand with respect to the Group 3 claims. One is that we believe that the claim construction of flexible was incorrect. Now, in terms of why would it be okay under the second position, which is the Court erred in—the Board erred in its determination of obviousness based on all the findings that were in the record. So we've got—there's no real dispute about the scope and content of the prior art. There's no real dispute about the differences between the prior art and the claimed invention, nor the level of skill in the art. What we're talking about is— Putting aside whether or not your argument was even timely, we would have to overrule the Board's conclusion that you didn't submit substantial evidence to support your position, even if timely. That's an uphill climb, given the deferential standard of review, right? Well, I think in this case, I'd say no. This is one of those rare circumstances. What we're talking about, the only difference we're talking about, is whether these elongated members would be considered flexible or made of flexible material under the Board's construction. That is just an immaterial or an unpatentable distinction, and it would be an obvious design choice. Okay. Well, you virtually used all of your friends' time, but we'll give you six minutes rather than seven. You've really only got three left, so— Okay. Okay. Thank you. Unless there's any further questions, I'll save the rest of my time. Briefly, I'd just like to follow up on a few of these points. Oh, I'm sorry. I thought you guys were rewriting. Oh. I'm sorry. I misunderstood. I was looking at the wrong page. You've got three more minutes. Okay. Go ahead. I have three more minutes now? Yeah. Yes. I was reserving three minutes. It's been a while since I sat in the center. I'm looking at the wrong list. He stopped the clock. Actually, three and a half minutes. Let me clarify, because I was reserving three minutes for rebuttal. Oh, okay. All right. We got it. I'll take— Got it. You got your three and a half minutes. I'll save three and a half minutes for rebuttal. How's that? Okay. I guess that means it's me. With respect to the definitions proposed by the petitioner in the petition for flexible, there wasn't any. What the petitioner did with respect to Tosaki, when it charted Tosaki for anticipation, it said, Tosaki expressly describes a situation where the shift levers are resilient and flexible. Then it quotes, in the modification shown in figures 23 and 24, the integrally formed shift lever will be, and then underlined, italicized, and bold, elastically deformed. It did contemplate that flexible meant that you had to have some sort of deformation. It was only when it went to Enright, which obviously did not have that, where it sort of closed its eyes and said, well, Enright is flexible because it moves. You can push it over here. Obviously, that's not flexible. That reads flexible right out of the— What about the board's conclusion that you've got two different concepts here, inherently resilient and flexible, and the board thought they had to mean something different? They absolutely do mean something different, and I agree with the board's construction. The board said that there's inherent characteristics of this lever, and essentially, you have to be able to deform it, and it has to be resilient such that it'll pop back. But why shouldn't they get to respond based on the exact same prior art that's in the record to the board's new claim construction? When Tosaki, let's assume, you probably disagree, but let's just assume Tosaki discloses flexibility. They're not pointing to anything new. You're on notice about what Tosaki discloses, and all they're doing is reacting to a claim construction that they didn't know the board was going to adopt, and their reply brief. And if you had wanted to submit a SORA reply, the board probably would have let you. What's wrong with that when the prior art that was used in this case discloses the flexibility, and all the board is relying on is this kind of nitpicky procedural requirement that they didn't point to Tosaki for flexibility. They only pointed to Enright. Well, I believe there's mostly because they didn't know that the board was going to use them as two separate requirements because that's not what they posed in their petition. Well, I respectfully disagree with the premise based on what I just read. They did know that there was a deformation requirement in addition to... Yeah, but that's not what they argued. The board came up with a claim construction that disagreed with the first. I don't believe it did. They fought it after the fact. Well, let's assume it did because that's not my reading of the record. Okay. They said, A, Tosaki is resilient, and therefore, excuse me, is deformable, elastically deformable, and therefore, it is flexible, and that is consistent with the board's construction. It's only because Enright doesn't have any flexibility at all under any construction that can be put forth with a straight face that has anything to do with flexing. It was only because of that that they took issue with the board because it would read out how they were trying to rely on Enright. Also, they did submit... It helps you if you just said, Tosaki shows flexibility. I mean, that seems, again, to suggest that the prior arc here discloses the resiliency and flexibility arc in claims. What I'm saying is they argued it discloses flexibility in the petition. They knew it was a requirement. They were required to set forth a claim construction for this term. They didn't. If they did, they acknowledged that it had to be deformable. So this isn't something new that happened because the board sprang it on them. They had the initial burden. They satisfied it with Tosaki or attempted to by saying Tosaki was elastically deformable. It's only an issue with respect to their other reference that they're trying to pretend didn't or had flexibility when they know it didn't have any flexibility. Also, they did have an opportunity to respond to our argument. So even though in the anticipation case, Tosaki is sufficient to show flexibility, because of the particular way they argued it, they can't go back to Tosaki to show flexibility in the obviousness case? Yes, and especially in this case. This seems like a big waste of time. I mean, if you ever try to assert these patents, they're clearly going to be invalid under a combination of Tosaki and Enright. Well, I don't know about that. There's a different standard in district court for among other things. But in this case, in this IPR, they specifically stated that Ironburg, in their patent owner's response to, excuse me, their reply to our patent owner's response, they say that Petitioner continues to rely upon the structure of Enright's mode switches themselves and uses Tosaki only for this suggestion to make those switches longer. They disclaimed any reliance on these very elements of Tosaki that we're now discussing. They said it in response to arguments that we were making. They disclaimed any reliance on that. Also, they had an obviousness argument based on Tosaki that the board didn't institute on. They were required under this court's rules and precedent, I believe, after SAS came down to ask for remand back down to have those arguments considered, and they didn't. So I would contend that they waived it. Okay, you're out of time. Thank you. Thank you. Why don't you address that last point? Why didn't you have an obligation to ask the board to reconsider the things that they did not institute on under SAS? I mean, you're basically saying, well, we didn't go back and say after SAS you needed to institute on everything, but we're allowed to argue it anyway. Actually, that's not what – I don't believe that's what we're saying. Well, you were saying, at least when you were back up here the last time around, that you actually did argue obviousness for all of the claims based upon Tosaki and in right based upon using Tosaki as the flexibility thing, but that's not the way I read this. Right, so – well, if this – I mean, it would be helpful if you could be clear about this. What I understand is the Group 2 claim, and we're only talking about the 525, not the 770. The only thing that was rejected as obvious in Group 2 for the 525 was Claim 20. You didn't – there's no obvious considerations of anything else in 525, and you said you asserted obviousness arguments as to all those other 525 claims, but the board didn't address them. You didn't ask the board to address them, and you didn't ask us after you – to file – to remand on SAS to have them address them, which they're required to do. If they're separate grounds, even if they're both grounds for invalidity after SAS, they would have been required to do that, but at this point, I think you're way too late. I understand your question, Your Honor, and I disagree in this respect. While there were grounds that were – on which the board did not specifically institute, that it addressed and did not institute, the obviousness based on Tasaki alone was asserted in the alternative to anticipation. So should this court decide that – Well, that's a different ground, though. I mean, you've got anticipation based upon Tasaki, and you've got obviousness based on Tasaki. There is no discussion whatsoever of obviousness based on Tasaki alone. I think the proper relief in this instance would be if, for some reason, the court would find that the anticipation of the Group 1 claim shouldn't be affirmed, then it would be to further the remand to the board then to address the alternative grounds. Even without a timely request post-SAS? In this instance, yes. I mean, pre-SAS, we wouldn't have done that because it would have been an uninstituted ground, and we wouldn't have reviewed the non-institution decision. And after SAS, we agreed that we had to remand, but only if you timely preserve the argument. And I don't see one jot of – this is the first time I've heard of this argument at all, much less a motion for remand based upon SAS. Well, we're not specific. We're not asking for remand based on SAS, assuming that there's affirmance on the Group 1 and Group 2 grounds. You're asking for remand based on the fact that you asserted an alternative theory? That's correct. That would be correct. But that would be on those specific claims. May I turn briefly to – 30 seconds. 30 seconds. Okay. Just – we do think that there was – that the Board's claim construction with respect to the term flexible was unreasonable, and it was inconsistent with the specification. The Board relied on a dictionary definition for flexible that was inconsistent with the intrinsic evidence. If it had correctly construed flexible, it should have construed it to mean able to be moved to a biased position by a user's finger. That is, by limiting it to being just capable to be bend or flex, the Board excluded embodiments of the claimed invention, of the alleged claimed invention, and that would be – and that was improper. So – What about the point that it says inherently resilient and flexible? Are you saying that we're not supposed to assume that those are two different things? Well, I think they are, and they're pointed out in the – actually in the specification as two different things as well. Inherently resilient is specifically defined as – let's see – is specifically defined at column three, lines 33 to – 34 to 35, which means that they return to an unbiased position and are not under load. Flexible is something else. Flexible deals with the ease of movement, the ease of movement to a biased position with the user's fingers. Resilience deals with the – more with the tendency of the elongated member to be able to return to a biased position. Those are two different properties. Okay. Thank you. All right. The case will be submitted. Thank you. Thank you.